**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| BGT INTERIOR SOLUTIONS, INC. | § | CASE NO. 21-21-32124-H5-11 |
|     Debtor | § | (Chapter 11) |

**EMERGENCY MOTION FOR AUTHORITY TO USE CASH COLLATERAL;**
**REQUEST FOR PRELIMINARY HEARING AND GIVING NOTICE OF FINAL**
**HEARING PURSUANT TO BANKRUPTCY RULES 4001(b)(2)**

---

**NOTICE PURSUANT TO BANKRUPTCY LOCAL RULE 4001(b)**

This Motion seeks an order that may adversely affect you. If you oppose the Motion, should immediately contact the moving party to resolve the dispute. If you and the moving party cannot agree, you must file a response and send a copy to the moving party. You must file and serve your response within 14 days of the date this was served on you. Your response must state why the Motion should not be granted. If you do not file a timely response, the relief may be granted without further notice to you. If you oppose the motion and have not reached an agreement, you must attend the hearing. Unless the parties agree otherwise, the court may consider evidence at the hearing and may decide the motion at the hearing.

Represented parties should act through their attorney.

Emergency consideration has been requested. If the court allows a shorter response time than 14 days, you must respond within that time. If the court sets an emergency hearing before the response time will expire, only attendance at the hearing is necessary to preserve your rights. If an emergency hearing is not set, you must respond before the response time expires.

---

**To:** The Honorable Eduardo V. Rodriguez,
      United States Bankruptcy Judge:

      COMES NOW, BGT Interior Solutions, Inc., Debtor In Possession herein ("Debtor"), and files this Emergency Motion For Authority to Use Cash Collateral; Request for Preliminary Hearing and Giving Notice of Final Hearing Pursuant to Bankruptcy Rule 4001(b)(2) and, in support thereof, would respectfully show as follows:

**BASIS FOR EMERGENCY RELIEF**

      1.    An emergency exists because the Debtor faces immediate and irreparable harm to the estate absent the emergency consideration of the relief requested in this Motion. The immediate use is necessary, and it will stabilize the Debtor's operations and revenue by paying ordinary, post-petition operating expenses, as well as any court approved pre-petition expenses

that may be at issue. As a result, if an emergency hearing is not set, the Debtor will be unable to operate.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this case and this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding within the meaning of 28 U.S.C. §157. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409(a). The statutory predicate for the relief sought is 11 U.S.C. §363.

## BACKGROUND

3. On June 23, 2021, ("Petition Date") the Debtor filed a Voluntary Petition for relief under Chapter 11 of the United States Code ("Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Texas, Houston Division. Pursuant to 11 U.S.C. §§ 1107(a), 1108, the Debtor is operating its business and managing its property as a debtor-in-possession. No trustee or examiner has been appointed, and no official committee of unsecured creditors has yet been formed.

4. Formed in 2001, the Debtor owns and operates a business known as BGT Interior Services, Inc., which is a leading provider of multi-family luxury interior finish packages to the construction industry in Texas and nationwide. The company specializes in custom turn-key flooring and countertop packages to fit a variety of multi-family, hospitality, or commercial settings. This company offers custom design services and interior finish packages, providing its customers a single point of contact from fabrication to installation. The Debtor employ approximately 45 employees and contractors.

5. On or about March 13, 2017, the Debtor entered into a promissory note with Green Bank, N.A. ("Green Bank") in the principal amount of $3,300,000.00 ("Stock Note"). The Stock Note was secured by the Debtor's deposit accounts, all money, instruments, securities, documents, chattel paper, credits, claims, demands, and all other property rights or interests of the Debtor ("Collateral") as evidenced by a UCC-1 Financing Statement filed on or about March 15, 2017. The Stock Note was assigned to Veritex Bank, N.A. ("Veritex") effective May 16, 2019. Veritex is now the holder of the Stock Note.

6. On or about March 13, 2017, the Debtor also entered into a Line of Credit Agreement with Green Bank in the principal balance to $4,000,000.00 ("LOC"). On or about November 20, 2020, the LOC was modified the increase the principal balance of $5,000,000.00. The LOC is secured by the Debtor's tangible and intangible assets including accounts, inventory, furniture, fixtures, and equipment, as evidenced by the UCC-1 Financing Statement filed effective January 18, 2018. The LOC was assigned to Veritex effective May 16, 2019. Veritex is now the holder of the LOC.

7. On or about July 24, 2017, the Debtor also entered into an equipment purchase financing agreement with Green Bank in the principal amount of $600,000.00 ("Equipment Note") which is secured by the inventory, raw materials, or works in progress of the Debtor. The

Equipment Loan was assigned to Veritex effective May 16, 2019. Veritex is now the holder of the Equipment Loan.

8.     On or about July 14, 2020, the Debtor obtained an Economic Injury Disaster Loan through the US Small Business Administration ("SBA") in the principal amount of $150,000.00 ("SBA Loan"). The SBA Loan is secured against all tangible and intangible assets of the Debtor as evidenced by the UCC-1 Financing Statement filed effective July 14, 2020.

9.     As of the commencement of this case, the Debtor is indebted to Veritex Bank on the Stock Note in the approximate amount of $1,456,850.00, on the LOC in the approximate amount of $3,334,974.00, and on the Equipment Loan in the approximate amount of $150,000.00. The Debtor is also indebted to the SBA in the amount of $150,000.00.

10.    This case was filed as a result of the Debtor's reduction in available cash arising from the enforcement efforts of The Weitz Supply Chain, LLC on its judgment in excess of $2,000,000.00.

11.    The Debtor's regular business operations and use of its assets generates sales on a daily basis. The Debtor's tangible and intangible assets, including funds derived from the operation of its business, are subject to Veritex's lien and are Veritex cash collateral ("Cash Collateral").

12.    The assets comprising the Cash Collateral are the Debtor's sole source of funds to continue to operate its business. The Debtor requires the use of the Cash Collateral and funds generated from its operations to continue to operate its business, to maintain a going concern value of the business, and to ensure that adequate funds are available for normal and customary business expenses and operating needs including utilities, maintenance, insurance, payroll, inventory purchases, and taxes.

## RELIEF REQUESTED

13.    Pursuant to Bankruptcy Rule 4001(b), the following summarizes the material terms of the Interim Order. The Debtors seek authority to use the Cash Collateral. As used herein, the term "Cash Collateral" means monies in the possession of Debtor on the Petition Date, or received by after the Petition Date in respect of or arising out of Debtors' use, sale, consumption or other disposition of any Pre-Petition Collateral or Replacement Collateral (defined below). The Debtor seeks to use such Cash Collateral as working capital in the operation of its business for the limited purposes specified in, and at least for the period defined in the attached Budget.

14.    As adequate protection for the diminution in value of the Pre-Petition Collateral or Replacement Collateral caused by the Debtor's use of the Cash Collateral, the Debtor will (i) maintain the value of its business as a going concern and (ii) provide Veritex replacement liens upon the Debtor's assets and proceeds thereof including but not limited to post-petition accounts, accounts receivable and cash (collectively, the "Replacement Collateral").

15. By this Motion, pursuant to 11 U.S.C. §§ 105, 361, 362, and 363 and Bankruptcy Rules 2002, 4001, and 9014, the Debtor requests that the Court enter an order (i) approving the Debtor's use of Cash Collateral, (ii) providing adequate protection for, and to the extent of, any diminution in the value of the Cash Collateral, and (iii) scheduling a final hearing (the "Final Hearing") for this Court to consider entry of a final order (the "Final Order") authorizing and approving the relief requested in this Motion.

## APPLICABLE AUTHORITY

16. Under 11 U.S.C. § 363(c)(2), a debtor may use cash collateral if each entity that has an interest in such cash collateral consents or if the Court, after notice and a hearing, authorizes the use of the cash collateral. Cash collateral is defined as, "[C]ash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest […]." 11 U.S.C. § 363(a).

17. Pursuant to 11 U.S.C. § 363(c)(3), the Court must condition a debtor's use of cash collateral as is necessary to provide adequate protection of the interest in the cash collateral claimed by a party.

18. Bankruptcy Rule 4001(b) and (d) governs the procedure for consideration of motions to use cash collateral, and both of these subsections provide for expedited consideration of such motions for cases in which immediate interim relief may be crucial to the success of a reorganization.

19. At a hearing on a debtor's motion for the use of cash collateral, the debtor bears the burden of proof on the issue of adequate protection, and the party claiming an interest in the cash collateral bears the burden of proof on the issue of the validity, priority, or extent of the lien. 11 U.S.C. § 363(p)(2) ("In a hearing under [§ 363], the entity asserting an interest in property has the burden of proof on the issue of the validity, priority, or extent of such interest.").

### Failure to Obtain the Immediate Interim Use of Cash Collateral Would Cause Immediate and Irreparable Harm.

16. The immediate use of cash collateral is necessary, and it will stabilize the Debtor's operations and revenue by allowing the Debtor to maintain adequate staffing levels sufficient to operate the Debtor's business. Without authority to use the Cash Collateral, the Debtor will not be able to function as a going concern and will not be able to proceed to consideration of a plan of reorganization. The Debtor possesses substantial assets which could be lost entirely if the Debtor is unable to resume operations. Accordingly, authority to use the Cash Collateral is necessary to avoid the shutdown of the Debtor's business, and will be in the best interests of the Debtor, its estate and its creditors.

**The Proposed Adequate Protection is Sufficient.**

17. The Debtor intends to provide adequate protection, to the extent of the aggregate diminution in value of Pre-Petition Collateral and Replacement Collateral (collectively, the "Collateral") from and after the Petition Date, to Veritex for the use of the Cash Collateral by: (a) maintaining the going concern value of the Debtor's business by using the Cash Collateral to continue to operate the business and administer this Chapter 11 Case; (b) providing to the Bank a replacement lien pursuant to 11 U.S.C. § 361(2) in the Debtor's assets, with such lien being junior in priority only to (i) Veritex's pre-petition liens, (ii) valid, enforceable, perfected and nonavoidable liens and security interests on the assets of Debtor that existed on the Petition Date and were superior in priority to Veritex's liens as of the Petition Date, and (iii) fees payable to the Clerk of this Court or, pursuant to 28 U.S.C. §1930, the United States Trustee.

18. The Debtor believes that Veritex is adequately protected for the use of the Cash Collateral in that the orderly operation of the Debtor's business generates sufficient revenues to protect any diminution in value of the Collateral. Indeed, the continuation of the Debtor's operations presents the best opportunity for Veritex to receive the greatest recovery on account of their claims. Accordingly, the Debtor submits that use of the Cash Collateral will allow the Debtor to continue its operations and thereby protect the Lender's interests.

19. Courts have consistently recognized that the preservation of the going concern value of secured creditor's collateral constitutes adequate protection of such creditors' interest in the collateral. *See, e.g., In re Pursuit Athletic Footwear, Inc.*, 193 B.R. 713, 716 (Bankr. D. Del. 1996) (holding that if there is no actual diminution of value of collateral and the debtor can operate profitably post-petition, then the secured creditor is adequately protected); *In re 499 W. Warren St. Assocs., Ltd. P'ship*, 142 B.R. 53, 56 (Bankr. N.D.N.Y. 1992) (finding a secured creditor's interest in collateral adequately protected when cash collateral was applied to normal operating and maintenance expenditures on the collateral property); *In re Stein*, 19 B.R. 458, 460 (Bankr. E.D. Pa. 1982) (creditors' secured position would be enhanced by the continued operation of the debtors' business); *In re Aqua Assocs.*, 124 B.R. 192, 196 (Bankr. E.D. Pa. 1991) ("The important question, in determining whether the protection to a creditor's secured interest is adequate, is whether that interest, whatever it is, is being unjustifiably jeopardized.") (citation omitted).

**REQUEST FOR PRELIMINARY HEARING**

20. An immediate need exists for the Debtor to obtain approval of the use of Cash Collateral in order to meet key expenses as described above and as identified in the attached Budget. Without the immediate use of the Cash Collateral for an interim period, the Debtor will be unable to resume operations and risks the loss of significant assets. Clearly this would have a severe negative impact upon the Debtor's going concern value and ability to successfully create value for all creditors. The Debtor's business, as a going concern, has a value far in excess of any value that might be obtained in a chapter 7 liquidation. Accordingly, it is imperative that a preliminary hearing be set immediately.

21. Pursuant to Bankruptcy Rule 4001, the Debtor requests that the Court set a preliminary hearing on the use of Cash Collateral, and that at such preliminary hearing, the Court (i) authorize the temporary use of Cash Collateral consistent with the Budget, in order to avoid immediate and irreparable harm to these bankruptcy estates pending a final hearing and (ii) direct Compass to release the reserve funds it currently holds to the Debtor in order to provide the Debtor to sufficient cash to fund the expenses shown in the Budget.

## REQUEST FOR FINAL HEARING

22. Pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2), the Debtor also request that the Court set a date for a final hearing as soon as practicable and fix the time and date prior to the Final Hearing for parties to file objections to this Motion.

## NOTICE

23. Notice of this Motion will be provided by email, when available, or by First Class U.S. Mail to: (i) the Office of the United States Trustee for the Southern District of Texas; (b) the Debtor's secured creditors, including the Lenders; (c) the parties listed on the Debtors' master service list. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

WHEREFORE, PREMISES CONSIDERED, the Debtor respectfully requests this Court enter its Order authorizing the use of Cash Collateral, providing the adequate protection outlined herein, and for all other relief to which it may be entitled.

Respectfully submitted,

**WALDRON & SCHNEIDER, L.L.P.**

 /s/ Kimberly A. Bartley
Kimberly A. Bartley
SBN 24032114
kbartley@ws-law.com
15150 Middlebrook Drive
Houston, Texas  77058
Tel:  (281) 488-4438 / Fax:  (281) 488-4597
PROPOSED COUNSEL FOR DEBTOR-IN-POSSESSION

**CERTIFICATE OF ACCURACY PURSUANT TO LOCAL RULE 9013-1(I)**

I hereby certify to the accuracy of the matters set forth in the foregoing motion.

/s/ Kimberly A. Bartley
Kimberly A. Bartley

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing Motion will be via First Class U.S. Mail, email or the Court's EM/ECF electronic system on the 24th day of June, 2021.

/s/ Kimberly A. Bartley
Kimberly A. Bartley